## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH

**RICHARD MICHEAL STOCKTON, JR.**                                                    **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 5:16-CV-P119-GNS**

**BRADLEY L. BOYD** *et al.*                                                    **DEFENDANTS**

### MEMORANDUM OPINION

This is a civil rights action brought by a prisoner pursuant to 42 U.S.C. § 1983.  The

Court has granted Plaintiff Richard Micheal Stockton, Jr., leave to proceed *in forma pauperis*.

This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v.*

*Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594

U.S. 199 (2007).  For the reasons set forth below, the action will be dismissed.

### I. SUMMARY OF COMPLAINT

Plaintiff is an inmate at the McCracken County Jail.  He was previously incarcerated at

the Christian County Jail (CCJ).  He brings this action against five Christian County officials –

Christian County Jailer Bradley Boyd; Christian County Judge Executive Steve Tribble; CCJ

Officers Steven Howard and David Burd; and CCJ "Class D-Coordinator" Sherri Guinn.  He

sues these Defendants in both their official and individual capacities.

Plaintiff first alleges that CCJ officials "turned off the phones for days at a time . . .

violating [his] attorney client privilege."  He specifically alleges that the phones were turned off

for most of the day on four days in March 2016 and that a "Leiut. Campbell" turned the phones

off "for over 24 hours for corporal punishment."  Plaintiff also alleges that, despite numerous

requests, he was denied access to the law library by Defendants Howard and Burd.

Plaintiff also asserts that from May to June 2016, Defendant Burd denied him "indigent packets" which consist of "stamps, envelopes, writing paper, and pencil." Plaintiff writes that "[b]y doing this [Defendant] Burd is refusing me contact with my family and the outside world."

Plaintiff also claims that jail officials sprayed toxic chemicals around inmates in a confined area. He specifically states that on March 21, 2016, bleach was sprayed in in his cell. He then alleges that because he has COPD and there were no exhaust fan in his cell, the fumes from the bleach choked him. Plaintiff also claims that jail officials sprayed bleach in his cell again on April 7, 2016, to clean black mold off the ceiling. He claims that since this date he has experienced chest pains and shortness of breath. Plaintiff was told that Defendant Burd "was over the spraying of chemicals."

Plaintiff also alleges that the inmate canteen fund at CCJ was used to supply several jail officials with "vehicle insurance and fuel to take these vehicles to and from their residences seven days a week and for personal uses." He further claims that these officials "use[d] equipment purchased for inmates to use at the RCC program for their own properties, as well as monetary gain by contracting jobs on their off time including skid steers, zero turn mowers, chain saws, JD Gator ATV, as well as the trailers to transport the equipment and inmates for the labor." Plaintiff asserts that canteen funds are supposed to be used for the "upkeep of bed linens, sheets, blankets, rec. equipment, indigent packages, stack bunks, etc. . . ."

Plaintiff also complains that he was "forced to sleep on the concrete floor for . . . four months without a stack bunk because this jail doesn't own any stack bunks."

Plaintiff further alleges that from June 1, 2016, through June 7, 2016, he was housed in a cell called a "law box" without running water or a toilet.

Plaintiff states that he complained to Defendant Guinn about the problems at the jail but that "nothing [was] done."

Finally, Plaintiff claims that jail officials denied him access to the federal courts by "refusing [him] notary services and certified mail."

As relief, Plaintiff seeks monetary and punitive damages.

## II. LEGAL STANDARD

Upon review under 28 U.S.C. § 1915A, a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, while liberal, this standard of review does require more than the bare assertion of legal conclusions.  *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins.*

*Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Individual-Capacity Claims

### 1. Defendants Boyd and Tribble

The Court will dismiss Plaintiff's claims against Defendants Boyd and Tribble because he does not allege that these Defendants were in any way personally involved in the conduct about which he complains. In order to recover against a given defendant in a civil rights action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). The mere fact of supervisory capacity is not enough: *respondeat superior* is not an available theory of liability. *Polk Cty. v. Dodson*, 454 U.S. 312,

325-26 (1981).  Plaintiff makes no factual allegations at all regarding these Defendants, let alone

that they were personally involved in the conduct which allegedly violated his rights.  At best,

Plaintiff's inclusion of these persons suggests his belief that they are liable simply because they

are supervisory officials, but "[i]n a § 1983 suit . . . where masters do not answer for the torts of

their servants - the term 'supervisory liability' is a misnomer."  *Iqbal*, 556 U.S. at 677

(2009).  The Court will therefore dismiss Plaintiff's individual-capacity claims against

Defendants Boyd and Tribble for failure to state a claim upon which relief may be granted.

### 2. Defendant Guinn

Plaintiff makes only one allegation against Defendant Guinn.  He alleges that he

complained numerous times to Defendant Guinn about the "problems at the jail" but that

"nothing [was] done."  However, § 1983 liability is premised on active unconstitutional behavior

and not a mere failure to act.  *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v.*

*Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Thus, the mere fact that Defendant Guinn failed to

respond to Plaintiff's alleged complaints is not enough to impose liability on her under § 1983.

Therefore, the Court will also dismiss Plaintiff's individual-capacity claim against Defendant

Guinn for failure to state a claim under which relief may be granted.

### 3. Defendant Burd

As set forth above, Plaintiff makes several allegations against Defendant Burd.  The

Court will address each of these allegations in turn.

### a. Denial of "Indigent Packets"

Plaintiff alleges that from May to June 2016, Defendant Burd denied him "indigent

packets" which consist of "stamps, envelopes, writing paper, and pencil."  Plaintiff writes that

"[b]y doing this [Defendant] Burd is refusing me contact with my family and the outside world."

However, the Sixth Circuit has held that even an indigent inmate has no constitutional right to free materials, such as postage, for nonlegal mail. *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (citing *Moore v. Chavez,* 36 F. App'x 169, 171 (6th Cir. 2002); *Hershberger v. Scaletta,* 33 F.3d 955, 957 (8th Cir. 1994)). Thus, this claim will also be dismissed for failure to state a claim upon which relief may be granted.

### b. Spraying of Bleach in Plaintiff's Cell

Plaintiff also alleges that Defendant Burd is responsible for the spraying of bleach in his cell on two occasions to clean black mold off the ceiling. Plaintiff alleges that his cell had no exhaust fans and that, because he has COPD, he has suffered chest pains and shortness of breath since the bleach was sprayed.

Plaintiff's claim is one for deliberate indifference to a substantial risk of serious harm under the Eighth Amendment. The deliberate indifference test is both objective and subjective. The objective component requires the inmate to show that the harm he faced was "sufficiently serious." At least one court has held that exposure to bleach in a confined space constitutes a sufficiently serious risk of harm. *See, e.g.*, *Jacobson v. Cathcart*, No. 10-13046, 2014 U.S. Dist. LEXIS 8659 (E.D. Mich. Jan. 24, 2014); *but see Abdur-Reheem-X v. McGinnis*, No. 99-1075, 1999 U.S. App. LEXIS 29997, at *7 (6th Cir. Nov. 12, 1999) (finding that plaintiff's claim that the odor of bleach from cleaning feces from his neighbor's cell was not a health threat "'to be so grave that it violates contemporary standards of decency to expose anyone unwillingly,'" and that "[a]nyone who thoroughly cleans a bathroom is exposed to the strong smell of bleach") (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

However, even if the Court assumes that Plaintiff has met the objective prong of this test, his claim fails because he cannot meet the subjective prong. The subjective prong requires that

6

the "official being sued subjectively perceived facts from which to infer substantial risk to the

prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*

*v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).  This requires "a sufficiently culpable state of

mind. . . ." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) (citation omitted).  Here,

Plaintiff's only allegation is that Defendant Burd was "over the spraying of chemicals."  This

allegation simply does not establish that Defendant Burd recklessly disregarded a risk to

Plaintiff's safety.  For this reason, Plaintiff fails to state a claim upon which relief may be

granted, and this claim will be dismissed.

### c. Denial of Access to the Law Library

Plaintiff further asserts that, despite numerous requests, he was denied access to the CCJ

law library by Defendant Burd.  The courts have recognized repeatedly that there is no

constitutionally protected right of access to a law library.  *Lewis v. Casey*, 518 U.S. 343, 350-51

(1996).  Prisoners do have a First Amendment right of access to the courts, but it does not

guarantee access to a prison law library.  *Id.; Bounds v. Smith*, 430 U.S. 817 (1977); *Walker v.*

*Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).  When an inmate claims his access to the courts was

denied merely because he was denied access to the prison library, he fails to state a claim absent

a showing of prejudice to his litigation.  *Walker v. Mintzes*, 771 F.2d at 932.  Thus, because

Plaintiff does not allege actual injury to any litigation due to Defendant Burd's alleged refusal to

allow him access to the law library, Plaintiff fails to state a claim upon which relief may be

granted, and the claim will be dismissed.

#### 4. Defendant Howard

Plaintiff also alleges that Defendant Howard denied him access to the law library. However, for the reasons set forth above, this allegation fails to state a claim against Defendant Howard under the First Amendment, and will be dismissed.

### B. General Claims

#### 1. Denial of Access to the Courts

Plaintiff alleges that CCJ officials "turned off the phones for days at a time . . . violating [his] attorney client privilege." He specifically alleges that the phones were turned off for most of the day on four days in March 2016. He also alleges that a "Leiut. Campbell" turned the phone off "for over 24 hours for corporal punishment." Plaintiff also contends that jail officials denied him access to the federal courts by "refusing [him] notary services and certified mail."

The Sixth Circuit has held that prisoners do not have a "constitutional right to unlimited access to a telephone" and XPlaintiff has not alleged that he was otherwise unable to communicate with his attorney. *See, e.g.*, *Brown v. Long*, No. 96-5567, 1997 U.S. App. LEXIS 2681, at *3 (6th Cir. Feb. 12, 1997). In addition, as stated above, while prisoners do have a First Amendment right of access to the courts, *Lewis v. Casey*, 518 U.S. at 350-51, a violation of this right only occurs if Plaintiff can show actual injury or prejudice to litigation. *Id.*; *Bounds v. Smith*, 430 U.S. 817; *Walker v. Mintzes*, 771 F.2d at 932. Here, Plaintiff has alleged no injury or prejudice to a specific cause of action due to the denial of notary services, certified mail, or unrestricted use of the telephone, and therefore fails to state a constitutional claim. *See, e.g.*, *McFadden v. Fischer*, No. 16-CV-6105-FPG, 2016 U.S Dist. LEXIS 136651, at *37-38 (W.D.N.Y. Sept. 30, 2016) (dismissing plaintiff's claim that denial of typing, notary, and copying services violated his right of access to the courts because plaintiff offered no facts

8

showing that a non-frivolous legal claim had been frustrated or impeded by this denial);

*Dennison v. Ky. Dep't of Corr.*, No. 3:14-cv-p679-DJH, 2015 U.S. Dist. LEXIS 55798, at *11-13

(W.D. Ky. Apr. 28, 2015) (dismissing plaintiff's claim that jail officials' denial of his ability to

send certified legal mail violated his constitutional rights because he alleged no actual injury to

any litigation).

Accordingly, Plaintiff's denial of access to the courts claims will also be dismissed.

### 2. Misuse of Canteen Funds and Jail Property

Plaintiff also alleges that the inmate canteen fund is being used to supply several jail

officials with vehicles for their personal use.  He further claims that jail officials use jail

equipment, such as "skid steers, zero turn mowers, chain saws, [and a] JD Gator ATV" for their

personal use and for monetary gain "by contracting jobs on their off time."

District courts have generally held that the misuse of jail funds does not establish a

violation of an inmate's constitutional rights under § 1983.  *See, e.g.*, *Blanton v. Bedford Cty.*

*Sheriff's Dept.*, No. 4:15-cv-14-HSM-WBC, 2016 U.S. Dist. LEXIS 13436, at *7 (E.D. Tenn.

Feb. 4, 2016); *Knight v. Montgomery Cty. Jail*, No. 3:15-cv-00309, 2015 U.S. Dist. LEXIS

45919, at *6-7 (M.D. Tenn. Apr. 8, 2015) ("While these allegations [of embezzlement

and misuse of funds], if true, may address criminal activity, there is no private right of action

under § 1983 where the activity did not directly violate the plaintiff's constitutional

rights.")(quoting *Patin v. LeBlanc*, No.11-3071, 2012 U.S. Dist. LEXIS 106300, at *23-24 (E.D.

La. May 18, 2012)); *Clauson v. Hageman*, No. 4:09-cv-815 CAS, 2009 U.S. Dist. LEXIS 87853,

at *9 (E.D. Mo. Sept. 24, 2009) (holding that defendants' alleged failure to appropriate canteen

funds according to state law does not rise to the level of § 1983 claim); *Bell v. Perry Cty.*

*Sheriff's Dept.*, No. 1:06-CV-155-TCM, 2007 U.S. Dist. LEXIS 10036, at *4-5 (E.D. Mo. Feb.

9, 2007) (holding that claim that jail officials misappropriated state and federal funds did not rise to the level of a constitutional violation).

Moreover, Plaintiff is without standing to assert claims based upon these allegations because he has not alleged that he suffered a concrete and particularized injury as a result of these actions by jail officials.

> Article III of the United States Constitution provides that parties attempting to invoke federal jurisdiction must allege an actual case or controversy. *O'Shea v. Littleton,* 414 U.S. 488, 493-94 (1974); *Flast v. Cohen,* 392 U.S. 83, 94-101 (1968). Thus, it is a threshold requirement that a plaintiff allege she has "sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement and not merely that [s]he suffers in some indefinite way in common with people generally." *Massachusetts v. Mellon,* 262 U.S. 447, 448 (1923).

*Miyazawa v. City of Cincinnati,* 45 F.3d 126, 127 (6th Cir. 1995).

Finally, if Plaintiff seeks to bring criminal charges against jail officials based upon these allegations, he cannot do so through a § 1983 action.  This Court does not have the power to direct that criminal charges be filed against anyone.  *Peek v. Mitchell*, 419 F.2d 575, 577-78 (6th Cir. 1970); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972).  "It is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General."  *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965).  Only federal prosecutors, and not private citizens, have authority to initiate federal criminal charges.  *See Sahagian v. Dickey*, 646 F.Supp. 1502, 1506 (W.D. Wisc. 1986); *see also United States v. Nixon*, 418 U.S. 683, 693, (1974) ("Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("A private citizen has no authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch.").

Thus, for all of these reasons, Plaintiff's claim based upon the misuse of jail funds and property will be dismissed for failure to state a claim upon which relief may be granted.

### 3. Conditions of Confinement

Plaintiff's remaining claims relate to his conditions of confinement at the CCJ. To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner plaintiff must show that the conditions resulted in "extreme deprivations" of basic necessities. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). As noted above, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

### a. Sleeping on the Floor

Plaintiff complains that he was "forced to sleep on the concrete floor for . . . four months without a stack bunk because this jail doesn't own any stack bunks." However, a prisoner has no constitutional right to sleep on an elevated bed. *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) (finding that the Constitution does not require elevated beds for prisoners); *see also Graves v. Boyd*, No. 5:16-CV-P51-TBR, 2016 U.S. Dist. LEXIS 107343, at *12 (W.D. Ky. Aug. 11, 2016) (finding no constitutional violation "where the allegation is that plaintiff had to sleep on the floor instead of an elevated bed because of overcrowding") (quoting *Starnes v. Green Cty. Sheriff's Dep't,* No. 2:08-cv-244, 2010 U.S. Dist. LEXIS 52139, at *12 (E.D. Tenn. May 26, 2010)). Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### b. Temporary Lack of Running Water or Toilet in Cell

Plaintiff further alleges that from June 1, 2016, through June 7, 2016, he was housed in a room called a "law box" without running water or a toilet.  Temporary placement in a cell with no flushable toilet is not an extreme deprivation of a basic necessity.  *See Abdur-Reheem-X v. McGinnis*, No. 99-1075, 1999 U.S. App. LEXIS 29997, at \*6 (6th Cir. Nov. 12, 1999); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992).  The short-term lack of running water is also not a condition that violates the Eighth Amendment.  *See Richmond v. Settles*, 450 F. App'x 448 (6th Cir. Dec. 2, 2011) (citing *Siller v. Dean*, No. 99-5323, 2000 U.S. App. LEXIS 1494, at \*2 (6th Cir. Feb. 1, 2000)); *Diaz v. Cumberland Cty. Jail*, No. 10-3932 (JBS), 2010 U.S. Dist. LEXIS 101449, at \*12-13 (D.N.J. Sept. 23, 2010).

The conditions about which Plaintiff complains - a lack of running water and a working toilet in his cell- were discomforts which he experienced for only six days.  Being deprived of a working toilet and running water in a cell are temporary inconveniences, not conditions that fall "beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).  Thus, this claim too must be dismissed because it fails to state a claim upon which relief may be granted.

### C. Official-Capacity Claims

As stated above, Plaintiff has sued all Defendants in their official capacities.  "[O]fficial-capacity suits . . . 'generally represent another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Thus, Plaintiff's official-capacity claims against these Defendants are actually against Christian County.  *See Lambert v.*

*Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  However, as explained above, Plaintiff has not stated a constitutional violation.  Therefore, he has not stated a cause of action against Christian County under § 1983.

For this reason, the Court will dismiss Plaintiff's official-capacity claims against all Defendants for failure to state a claim upon which relief may be granted.

### IV. CONCLUSION

For the foregoing reasons, this action will be dismissed by separate Order.

Date:  December 7, 2016

**Greg N. Stivers, Judge**
**United States District Court**

cc:  Plaintiff, *pro se*
    Defendants
4416.011

13